LEXINGTON–FAYETTE URBAN COUNTY HUMAN RIGHTS COMMISSION and Meloris Baker, Appellants,

v.

WAL–MART STORES, INC., Appellee.

No. 2002–CA–001461–MR.

Court of Appeals of Kentucky.

July 11, 2003.

Edward E. Dove, Lexington, KY, for appellants.

Kathryn A. Quesenberry, Elizabeth N. Monohan, Louisville, KY, for appellee.

Before COMBS, GUIDUGLI, and SCHRODER, Judges.

## OPINION

COMBS, Judge.

Lexington–Fayette Urban County Human Rights Commission (the Commission) and Meloris Baker appeal from an Opinion and Order of June 14, 2002, of the Fayette Circuit Court. The circuit court vacated a decision of the Commission that had favored Baker; it ordered the Commission to conduct a new hearing on her charge of discrimination against the appellee, Wal–Mart Stores, Inc., (Wal–Mart). After reviewing the record, we reverse and remand.

On October 4, 1999, Baker filed a charge with the Commission complaining that employees of Wal–Mart mistreated her because of her race and/or national origin. Baker, a black woman of Jamaican descent, alleged that while shopping at Wal–Mart in Lexington on September 3, 1999, she was wrongfully accused of shoplifting after an electronic device was activated as she exited the store. Baker stated that she fully complied with the requests of the store's employees that she re-enter the store and empty the contents of her backpack. She also agreed to walk back and forth through the door in an attempt to determine why the alarm had sounded. Although a search of her belongings failed to uncover any merchandise for which Baker had not paid, she nonetheless was repeatedly accused of having stolen something. After Baker left, two or three of Wal–Mart's employees followed her to a nearby store and told its owner to "watch" Baker, claiming that she was a "thief."

The Commission notified Wal–Mart of her charge by certified mail. Danny Lester signed the receipt to be returned to the Commission. Kirk Guthrie, a paralegal who worked at Wal–Mart's home office in Bentonville, Arkansas, responded to Baker's charges and identified himself as the person to whom the Commission should forward all future correspondence concerning the discrimination claim. He informed the Commission that Baker's claims were without merit. He contended that the store employees were merely responding to the electronic alarm in order to make certain that all of the items that Baker had

purchased were de-activated. He claimed that the incident "had nothing to do with [Baker's] race or national origin."

In conducting its investigation, the Commission (with Guthrie's cooperation) interviewed the individuals who participated and/or witnessed the events of which Baker complained. On March 12, 2001, the Commission informed the parties that its investigation had uncovered "substantial evidence" in support of Baker's version of the events that transpired on September 3, 1999, while failing to reveal any evidence in support of Wal–Mart's defense. The Commission then notified the parties that a representative of the Commission would contact each of them within two weeks to begin the conciliation process.

At the time of making its probable cause determination, the Commission was unaware that Guthrie was no longer employed by Wal–Mart. Even after it received the adverse determination, Wal–Mart failed to notify the Commission that Guthrie was no longer a member of its legal team or to advise the Commission of his replacement. Over the next several weeks, the Commission sent the following letters to Guthrie:

(1) a letter (mailed on March 22, 2001) inviting the parties "to join in a collective effort" to resolve the matter and setting a deadline of April 5, 2001, for the conciliation process;

(2) a Notice of Unsuccessful Conciliation (April 17, 2001);

(3) a Final Notice of Unsuccessful Conciliation (May 1, 2001);

(4) an order appointing a hearing officer (May 23, 2001); and

(5) a Notice of Pre–Hearing Conference scheduled for June 11, 2001 (May 23, 2001).

All mail continued to be addressed to Guthrie in care of the Wal–Mart Legal Team at Wal–Mart's home office in Arkansas. Wal–Mart failed to respond to any of the letters and did not attend the pre-hearing conference.

On June 18, 2001, the Commission sent Wal–Mart a Pre–Hearing Order by certified mail. Once again, Danny Lester signed to acknowledge receipt. This order notified Wal–Mart that a public hearing would be conducted on Baker's claim on July 9, 2001. In her order, the hearing officer cautioned Wal–Mart that if it continued to be unresponsive to the Commission's proceedings, it was in danger of having a default judgment entered against it on the issue of liability. Wal–Mart did not respond nor did it attend the public hearing.

In her findings of fact and conclusions of law entered on August 23, 2001, the hearing officer found that Wal–Mart had been sent appropriate notice of the hearing and had failed to attend or respond in any way. Granting Baker's motion for a default judgment on the issue of liability, the hearing officer also found that Baker had presented evidence that she had been singled out for disparate treatment based on her race and national origin. The hearing officer recommended that Baker be awarded damages of $2,500 to compensate her for the discrimination she had suffered and a similar sum for her embarrassment and humiliation. These recommendations were mailed to Guthrie by certified mail on August 23, 2001.

On September 7, 2001, Wal–Mart filed a motion before the Commission requesting that it set aside the default judgment and conduct a new hearing. It supported the motion with the affidavit of Graham Jones, a paralegal at the office in Bentonville, Arkansas, who stated that Guthrie had not been employed at Wal–Mart since prior to March 2001. Jones further averred that Wal–Mart's corporate legal team had not

received any correspondence from the Commission regarding the scheduled hearing and that it was totally unaware that the matter was being pursued by the Commission. Wal–Mart asserted that the only reason it had failed to participate in the hearing or pre-hearing conference was that it had not received notice of the proceedings. With respect to the certified mail receipts signed by its employee, Lester, establishing service of the pre-hearing order and the notice of the public hearing, Wal–Mart suggested that they might have been "lost or misrouted." Conspicuously absent from Wal–Mart's motion was an affidavit from Lester, the sole employee who might have been able to shed some light on what happened to all the mailings (both regular and certified) sent by the Commission.

On September 24, 2001, the Commission remanded the matter to the hearing officer and directed that she make recommended findings of fact and conclusions of law with respect to Wal–Mart's motion to set aside the default judgment. Accepting Wal–Mart's argument that the Commission should have contacted Wal–Mart in order to determine why Wal–Mart did not respond to the conciliation letter, the hearing officer recommended that the default judgment be set aside as follows:

> The Commission cannot be expected to do any more than what [it] did in notifying [Wal–Mart] of the Pre–Hearing conference and Public Hearing. Notices were sent by certified mail, return receipt requested. The receipt cards were properly returned to the Commission. The Commission cannot be held accountable for the misdirection or destruction of these notices at [Wal–Mart's] corporate offices. However, the Commission can be expected to have more than a wait and see attitude regarding conciliation efforts.

On November 20, 2001, after reviewing the entire record, the Commission denied Wal–Mart's motion to set aside the default judgment and adopted the order originally recommended by the hearing officer. Wal–Mart then sought judicial review in the Fayette Circuit Court. In the opinion and order from which the Commission and Baker have appealed, the circuit court concluded as follows:

> The Court, having considered the arguments of the parties, holds that a new hearing should be conducted. The Court does not favor default judgments when there are legitimate questions of actual notice, and indeed has a strong preference for issues to be settled on their merits. The Court feels that Defendant Baker would not be unduly prejudiced if another hearing were conducted. The Court notes that the record indicates that [Wal–Mart] had actively participated in defending the charge against it up until the letter regarding reconciliation [sic] was sent. The Court holds that equity and fairness require that the merits of the case be explored. Thus, the Commission's November 20, 2001 Order is set aside and a new hearing is to be conducted.

In this appeal, the appellants argue that the lower court erred in setting aside the Commission's default judgment. They contend that Wal–Mart could not and did not show arbitrariness by the Commission in denying the motion to set aside the default judgment. Additionally, they claim that the Fayette Circuit Court failed to articulate sufficient reasons for vacating the Commission's award to Baker. They note that Wal–Mart omitted any explanation as to why it chose not to participate in the process, failed to articulate a valid defense, and failed to show any prejudice inherent in the default judgment.

Wal–Mart maintains that the Fayette Circuit Court acted properly within its discretion in vacating the Commission's order. It cites *Howard v. Fountain*, Ky. App., 749 S.W.2d 690, 692 (1988), in support of its argument that "trial courts possess broad discretion" in considering a motion to set aside a default judgment. However, this argument overlooks the important fact that the circuit court was not acting as a trial court of first instance in this matter; rather, it was acting in an appellate capacity in reviewing the determination of an administrative tribunal. It was the Commission—not the trial court—that enjoyed discretion in ruling on Wal–Mart's motion to set aside the default judgment. The Commission's ruling was, therefore, entitled to the same deference from the reviewing court as this court must accord to a trial court when reviewing one of its discretionary rulings. The Fayette Circuit Court was not at liberty to make its own independent determination but was bound and required to determine whether there was substantial evidence in the record to support the action taken by the administrative agency.

▆▆▆ The scope of review of an agency's decision either by this court or by a circuit court is very limited. *Aubrey v. Office of the Attorney General*, Ky.App., 994 S.W.2d 516, 518 (1998). The focus of a court's inquiry as to agency action is ultimately concerned with the question of arbitrariness. *See, Hougham v. Lexington–Fayette Urban County Government*, Ky. App., 29 S.W.3d 370, 373 (1999).

[T]he Courts do not have the authority to review the agency decisions *de novo*. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, Ky., 379 S.W.2d 450, 458 (1964). Judicial review of the administrative action is confined to a determination of whether the action

taken was arbitrary. *City of Louisville v. McDonald*, Ky., 470 S.W.2d 173, 178 (1971). So long as the agency's decision is supported by substantial evidence of probative value, it is not arbitrary and must be accepted as binding by the appellate court. *Starks v. Kentucky Health Facilities*, Ky.App., 684 S.W.2d 5 (1984).

*Aubrey v. Office of the Attorney General*, Ky.App., 994 S.W.2d 516, 518 (1998).

▆▆▆ In exercising its discretion in ruling on the motion to set aside the default judgment, the Commission was required to consider whether Wal–Mart had a fair opportunity to present its claim and whether granting the motion would result in prejudice to Baker. *Haven Point Enterprises, Inc. v. United Kentucky Bank, Inc.*, Ky., 690 S.W.2d 393, 394–95 (1985). Although the circuit court intimated that there was a "legitimate question" concerning the issue of notice, a review of the record compiled before the Commission reveals considerable evidence that Wal–Mart had both actual and inquiry notice of the proceedings before the Commission. Therefore, we find no merit in Wal–Mart's oft-repeated contention that the Commission's decision resulted in a denial of its constitutional right to procedural due process. The record leaves no doubt that Wal–Mart's failure to defend itself did not result from an absence of adequate notice by the Commission. Rather, the failure of Wal–Mart's legal team to become apprised of the proceedings was apparently the result of an internal corporate problem.

As set forth earlier in this opinion, the Commission complied with Wal–Mart's directions in sending all notices to Kirk Guthrie in care of the Wal–Mart Legal Team by first class or certified mail. Although Guthrie left his employment with Wal–Mart during the Commission's investigation of Baker's complaint, neither his

replacement—nor any other representative of Wal–Mart—notified the Commission of this fact. Furthermore, Wal–Mart anticipated hearing from the Commission within two weeks of the probable cause determination in order to discuss conciliation. Nonetheless, Wal–Mart did not contact the Commission when no further communication was forthcoming. In short, we know of nothing else that the Commission could have done to comply with Wal–Mart's rights to due process; nor does Wal–Mart suggest a reasonable or credible alternative.

In *Cox v. Rueff Lighting Company,* Ky. App., 589 S.W.2d 606 (1979), a case factually similar to the one before us, this court held that the disregard of a lawsuit due to the carelessness either of a party or of its attorney is not a reasonable basis to set aside a judgment. In *Rueff Lighting,* the process agent for a corporation threw away a registered letter containing a summons and complaint after allegedly having mistaken it for junk mail. The trial court refused to set aside the default judgment against the corporation, and this court found no abuse of the trial court's discretion. Similarly, in this case, the Commission denied the motion to set aside the default judgment in light of Wal–Mart's claim that no fewer than seven pieces of mail were either lost or misplaced. As in *Cox, supra,* the issue involved the credibility of those claiming ignorance of the process—a factual matter appropriate for determination solely by the Commission.

Considering the substantial evidence that Wal–Mart was provided with notice of all of the proceedings before the Commission, we do not agree that the failure of the Commission to address the specific issue of prejudice requires a reversal of its judgment. The trial court did not believe that Baker would suffer any prejudice if a new hearing were conducted. Regardless of the arguable prejudice to Baker, we conclude that the Commission did not abuse its discretion. It properly held Wal–Mart duly accountable for an alleged breakdown within its own corporate structure that prevented the numerous Commission mailings from reaching the responsible personnel. We find no arbitrariness in the action of the Commission denying relief to Wal–Mart under the particular circumstances of this case.

Finally, Wal–Mart argues that the Commission was not entitled to a default judgment by claiming that it did not comply with its own procedures. Specifically, Wal–Mart contends that the notice of the public hearing was not served twenty days before the hearing conducted on July 9, 2001. However, the record indicates otherwise.

Two notices concerning the July 9th hearing were sent to Wal–Mart. The first, a pre-hearing order, was sent by certified mail on June 18, 2001—more than twenty days before the hearing. The second, a notice of public hearing, was sent by certified mail on June 26. Wal–Mart refers only to the later notice in making this argument and ignores the pre-hearing order that satisfied the Commission's 20–day notice requirement.

The judgment of the Fayette Circuit Court is reversed, and this matter is remanded with directions to reinstate the Commission's award.

ALL CONCUR.